```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                        04-CV-4380(JMR/RLE)
```

| | |
|---|---|
| James W. Willhite and Bonnie ) | |
| M. Willhite ) | |
| ) | |
| v.    ) | ORDER |
| ) | |
| Don and Cheryl Collins, ) | |
| Stephen Baker, Terry Freeman, ) | |
| Cass County Board of ) | |
| Commissioners, Paul ) | |
| Fairbanks, and Leech Lake ) | |
| Realty ) | |

All parties seek summary judgment. This case is dismissed for lack of subject matter jurisdiction. Further, plaintiffs' counsel is hereby directed to respond to this Court's Order to Show Cause set out at the conclusion of this Order.

I. Background

This case represents an entirely improper effort to resuscitate a long-decided Minnesota state court dispute. Plaintiffs ask the Court to revisit an issue concerning a property line dividing their property and their neighbors', Don and Cheryl Collins. In 1996, the Collinses commissioned a survey of their property. The survey revealed that the Collinses' property extended approximately 30 feet onto plaintiffs' land. The evil spawn of this survey is a mass of litigation, including the matter before the Court.

The first of these cases began in 1997, when plaintiffs brought a quiet title action asserting ownership of the disputed land by adverse possession. To support this claim, they

commissioned their own survey.  This survey confirmed the findings of the Collinses' survey.

The Honorable Michael Haas of the Cass County District Court ruled that plaintiffs had no interest in the disputed land, and any use of the property by them was a trespass.  Judge Haas further ordered the Willhites to remove all of their personal property from the land.  Plaintiffs appealed this ruling to the Minnesota Court of Appeals – and after losing again – they appealed to the Minnesota Supreme Court.  The Minnesota Supreme Court declined review.[1]

This final decision did not stop the Willhites.  In 2002, they commissioned a second survey, this time by Roger Mustonen ("Mustonen survey").  According to Mr. Mustonen, both previous surveys were flawed, and the land belonged to plaintiffs.  In April, 2002, plaintiffs moved, in state court, to vacate Judge Haas's Order based on the Mustonen survey.  The Court denied their motion, stating "[t]he time for finding mistakes has passed," and declined to revisit the property line location.  (J. Haas Or. Den. Pls.' Mot. Vac. (Apr. 12, 2002)).  Judge Haas also held plaintiffs in contempt of court for their failure to comply with his previous Order.

Plaintiffs did not appeal this decision, but on October 10,

---

[1] At oral argument, plaintiffs' counsel acknowledged that plaintiffs could have sought review by the United States Supreme Court, but chose not to do so.

2002, now represented by attorney David M. Van Sickle,[2] they commenced another state court action challenging the boundary line. This time, the Honorable John P. Smith of the Cass County District Court dismissed their claims with prejudice, finding they were barred by res judicata and collateral estoppel. Judge Smith held that the property boundary had been established, and would not be re-evaluated. Judge Smith emphasized that "[a]ny attempt to re-litigate, interfere with or otherwise alter the previous determination will result in severe sanctions against the offending party." (J. Smith Mem. Re. Boundary Line ¶ 3 (Oct. 30, 2003)). Plaintiffs did not appeal.

Beyond this ruling, Judge Smith imposed sanctions against Mr. Van Sickle for failing to prevent repeated litigation over matters which had been finally adjudicated.

The state proceedings did not end, however. In June, 2004, the property line dispute again arose, this time before the Honorable David F. Harrington of the Cass County District Court. Judge Harrington also found the Willhites in contempt for failure to comply with the original March, 2000, Court Order. Judge Harrington again reiterated to plaintiffs and Mr. Van Sickle that the boundary line was a settled matter, and would not be re-examined.

---

[2]Mr. Van Sickle is also counsel in this matter.

II.  The Present Case

Plaintiffs are now before this Court, bringing the same case, against the same and collateral parties, in an effort to relitigate the same questions, this time styled as claims under 42 U.S.C. §§ 1983 and 1985, coupled with several purportedly supplementary state tort claims.

In his reply to defendants' summary judgment motions, plaintiffs' counsel acknowledged that the 42 U.S.C. § 1985 claim should be dismissed. (Pls.' Memo. of Law at p. 15, n.1 (Jul. 2, 2005)). He persists, however, in pressing the remaining claims, asking this Court to make findings of law regarding the disputed boundary, and to declare Minnesota state law unconstitutional based upon a perceived conflict with the federal land survey law set out in 43 U.S.C. § 752, et seq. Plaintiffs also seek compensatory and punitive damages, as well as costs, expenses, and attorney's fees.

III. Analysis

   A.  Subject Matter Jurisdiction and Rooker-Feldman

As a court of limited jurisdiction, a federal court's first duty is to determine whether any matter is properly within its purview. As such, a federal court may raise jurisdictional issues sua sponte. Johnson v. City of Shorewood, 360 F.3d 810, 818 (8th Cir. 2004). It is well established that lower federal courts are without subject matter jurisdiction to review state court judgments. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983). "A federal district court cannot entertain

constitutional claims attacking a state-court judgment, even if the state court had not passed directly on those claims, when the constitutional claims are 'inextricably intertwined' with the state court's judgments." Exxon v. Saudi Basic Industries, 125 S.Ct. 1517, 1523 n.1 (2005) (citing Feldman, 460 U.S. at 482 (1983)). This is known as the Rooker-Feldman doctrine. See Exxon, 125 S.Ct. at 1518. The Court is well aware that the United States Supreme Court has carefully re-examined the Rooker-Feldman doctrine this past term, but the case at bar falls completely within the doctrine's carefully defined parameters. See Mosby v. Ligon, 2005 WL 1962293 at 3 (8th Cir. 2005).

A claim is inextricably intertwined "if the relief requested in the federal action would effectively reverse the state court decision or void its ruling." Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995). Rooker-Feldman analysis "requires determining exactly what the state court held," and whether the federal claims are inextricably intertwined with the state court holding. Charchenko, 47 F.3d at 983.

Here, the parties have engaged in extensive litigation. The disputed land boundary was established on March 1, 2000, by the Cass County Court. The case was appealed to Minnesota's highest court, with no appeal to the United States Supreme Court. Subsequent Minnesota state court orders explicitly noted the finality of the March 1, 2000, finding.

Notwithstanding these conclusive determinations, the Willhites now come to federal court attempting to exhume their dead claims by alleging a deprivation of constitutional rights under 42 U.S.C. § 1983.  Whether framed as state or federal claims, their facts and allegations are for all intents and purposes identical to those litigated in the Minnesota state court cases.

Plaintiffs ask the federal court to legally recognize and enforce a survey which is precisely contrary to the boundary line established by its sister courts in Minnesota.  Further, they would have this Court direct county officials to act in a fashion contrary to the Minnesota courts' holdings.

Plaintiffs' requests are premised on the Mustonen survey, a survey which was expressly rejected by Judges Haas and Smith in their Orders defining the disputed boundary line.  Plaintiffs did not appeal the original state court determination of the boundary line to the United States Supreme Court, nor did they appeal the subsequent state court decisions dismissing their ongoing challenges to the boundary line.  Though cloaked in federal constitutional terms, this case is simply another appeal of the state court rulings.

Plaintiffs' pleadings are explicit:  while styled as a new federal claim, this lawsuit is an invitation to revisit the Minnesota judgments.  Plaintiffs claim Judge Haas's decision is "a nullity."  (Pls.' Mem. in Opp'n to Defs.' Mot. for Summ. J. at 9).  They further claim the supremacy clause renders the state court

6

decisions unconstitutional, and they "appeal" to the "equitable and legal powers of this court to remedy a grave injustice to the plaintiffs."  (Pls.' Reply Mem. at 7).

However framed, plaintiffs seek federal relief voiding, and effectively reversing, the state court rulings.  The Rooker-Feldman doctrine prevents this Court from engaging in any review of state court decisions, and plaintiffs' § 1983 claims must be dismissed for lack of subject matter jurisdiction.

    B.  <u>Collateral Estoppel Bar</u>

Even if this Court had jurisdiction, this case presents the quintessential example of collateral estoppel.  That doctrine bars any decision by this Court relitigating issues regarding the boundary line. "Issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered."  <u>Migra v. Warren City School Dist. Bd. of Education</u>, 465 U.S. 75, 83 (1984).  The boundary line issue has been litigated, litigated, and re-litigated in state court.

Judge Smith held that collateral estoppel and res judicata barred his own review of the location of the property line.  He found that, "regardless of the survey, the surveyor or the location of the section quarter corners, the common boundary line between the property owned by plaintiffs [Willhites] and the property owned by defendants Collins had been determined in [the original action,

7

commenced in 1997 and ruled on in 2000]." (J. Smith Mem. Re. Boundary Line, ¶ 3 (Oct. 30, 2003)). Plaintiffs took no appeal from this decision.

Full faith and credit and comity also prevent this Court from revisiting the issue. If this Court were to set the property line in accord with the Mustonen survey, its action would overrule and modify the boundary established by Minnesota's state courts. This case, therefore, is purely a request by plaintiffs to recognize the Mustonen survey. The fact that their claims are swaddled in a federal statutory wrap does not change the fact that they are barred by collateral estoppel.

C.  Supplemental Jurisdiction Under 28 U.S.C. § 1367

Plaintiffs' remaining claims, and defendant Leech Lake Realty's counter-claims, all rely on state law. Supplemental jurisdiction grants federal courts having original jurisdiction over a matter the power to exercise jurisdiction over all claims which are a part of the same case or controversy. 28 U.S.C. § 1367(a). At the time of this hearing, the only remaining federal claim was to have been heard under 42 U.S.C. § 1983. That claim has been dismissed. With that dismissal, this Court no longer has original jurisdiction over any remaining claims. Accordingly, the Court declines to exercise jurisdiction over the remaining state law claims, and dismisses both plaintiffs' and Leech Lake Realty's state claims without prejudice. 28 U.S.C. § 1367(c)(3).

IV.  Conclusion

This Court lacks jurisdiction over plaintiffs' claims under 42 U.S.C. § 1983.  Even if the Court had jurisdiction, the claims are barred by the doctrine of collateral estoppel.  Accordingly, IT IS ORDERED that:

1.  Plaintiff's federal claims are dismissed.

2.  The remaining state law claims are dismissed without prejudice for lack of subject matter jurisdiction.

3.  David M. Van Sickle is hereby ordered to show cause, in writing, on or before September 19, 2005, why he should not be sanctioned by this Court, under either Rule 11 of the Federal Rules of Civil Procedure, or under the Court's inherent authority, for bringing a clearly-barred action, and causing defendants to sustain costs and attorneys' fees in relation thereto.  Mr. Van Sickle is further directed to advise this Court of the nature and date of each and every sanction or admonition to which he has been subject by any court since 1995.  Mr. Van Sickle is finally directed to address whether he ought to be disbarred or suspended from the practice of law at the bar of this Court.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 24, 2005

                                          s/ James M. Rosenbaum
                                          JAMES M. ROSENBAUM
                                          United States Chief District Judge